FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 21, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PATRICK FLEETWOOD and MICHAEL FLEETWOOD,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>WASHINGTON STATE UNIVERSITY,<br><br>　　　　Defendant. | No. 2:20-CV-00355-SAB<br><br>**ORDER DENYING MOTION TO REMAND** |

Before the Court is Plaintiffs' Motion to Remand, ECF No. 7. This motion was considered without oral argument. Plaintiffs are represented by Matthew Crotty. Defendant is represented by Debra Lefing and Brian Baker. Having reviewed the briefing and the applicable caselaw, the Court denies Plaintiff's Motion to Remand.

**Facts**

The following facts are pulled from Plaintiffs' state court Amended Complaint, ECF No. 1-2.

In the fall of 2018, Plaintiff Patrick Fleetwood ("Mr. Fleetwood") was a fourth-year ROTC cadet at Defendant Washington State University ("WSU"). During late November or early December 2018, Mr. Fleetwood began a "short-lived consensual sexual relationship" with a first year ROTC cadet ("C.P." for Complaining Party). The relationship ended soon after once C.P. learned that Mr.

**ORDER DENYING MOTION TO REMAND # 1**

Fleetwood was sleeping with other women. But, in January 2019, Mr. Fleetwood invited C.P. and two other students to a lunch at Pullman's Red Bento sushi restaurant in January 2019—however, only C.P. was able to attend. C.P. subsequently alleged to another peer cadet, Cadet M., that—at the lunch—she had perceived Mr. Fleetwood as being "flirty with her," but that he later "bec[a]me hostile towards her due to her refusal to provide ongoing sexual favors."

This subsequently ignited a rumor mill among the cadets regarding Mr. Fleetwood and C.P.'s relationship. C.P. alleges that some of the cadets encouraged her to file a Sexual Harassment/Assault Response and Prevention Program (SHARP) complaint against Mr. Fleetwood to the ROTC board. Upon hearing about C.P.'s plan, Mr. Fleetwood asked C.P. to stop talking about their relationship as if it had not been consensual, as well as had some conversations with fellow cadets (some instituted by Mr. Fleetwood himself and some instituted by other cadets) about the potential ensuing investigation. C.P. officially filed her complaint with WSU ROTC on January 18, 2019. Along with her complaint, C.P. gave a sworn statement questioning Mr. Fleetwood's character and ability to serve as an officer in the Army due to "the way he treats women" and raising concerns about how rumors of Mr. Fleetwood's sexual promiscuity made her "realize why someone would take their own life due to another person destroying their reputation." That same day, WSU ROTC forwarded C.P.'s complaint to WSU's Office of Equal Opportunity ("OEO")—WSU OEO Investigative Assistant Cheryl Rose reached out to C.P. about filing a Title IX complaint through the Office of Community Standards.

On January 22, 2019, ROTC Lieutenant Colonel Brendan Hobbs informed Mr. Fleetwood that he had requested a Commander Inquiry and formal Title IX investigation into Mr. Fleetwood's behavior between December 2018 and January 2019 and ordered Mr. Fleetwood to cease any communication with C.P. On June 13, 2019, WSU OEO delivered an Investigation Report, which found Mr.

**ORDER DENYING MOTION TO REMAND # 2**

Fleetwood responsible for violating WSU Executive Policy 15 Prohibiting Discrimination, Sexual Harassment, and Sexual Misconduct ("Executive Policy #15") based on C.P.'s claims. Around October 2019, Mr. Fleetwood learned that he would have to appear before the WSU Conduct Board for a formal hearing and before the ROTC Disenrollment Board to determine whether Mr. Fleetwood should remain in ROTC. Mr. Fleetwood requested a delay in the disenrollment hearing so that he could file a public record requests for the June 13, 2019 investigation and related documents. But on November 21, 2019, WSU told Mr. Fleetwood that his public record requests were denied under the Family Educational Rights and Privacy Act ("FERPA").

On December 5, 2019, Mr. Fleetwood met with WSU Director of the Center for Community Standards and University Conduct Officer, Karen Metzner, in her office for what was purportedly his WSU formal Conduct Board hearing. But Mr. Fleetwood alleges that nobody else was present at the meeting and that he was neither given the opportunity to cross-examine witnesses nor to review the file containing the June 13, 2019 investigative report. Then, on December 9, 2019, an Army Disenrollment Board held a hearing on Mr. Fleetwood's case, which included presentation of evidence, credibility determinations, and direct and cross-examination of witnesses and lasted over 10 hours.

On December 16, 2019, WSU—based on Ms. Metzner's investigation and meeting with Mr. Fleetwood—found Mr. Fleetwood responsible for violating three community standards regarding sexual harassment, violation of university policy, and abuse of the student conduct system by discouraging participation in the investigation and reporting. WSU placed Mr. Fleetwood on "enrollment hold" and disciplinary probation until he (1) ceased all contact with C.P. and all other parties involved until December 16, 2021; (2) drafted an action plan and wrote a reflection paper; and (3) completed a state-approved alcohol and drug information program. Also, on December 19, 2019, WSU Army ROTC informed Mr. Fleetwood that he

**ORDER DENYING MOTION TO REMAND** # 3

had breached the terms of his ROTC contract due to his undesirable character as evidenced by his violation of WSU Executive Policy #15, as well as due to the allegations that Mr. Fleetwood had sent out an explicit video and showed other cadets naked and inappropriate pictures of women. On August 13, 2020, the Army officially disenrolled Mr. Fleetwood from ROTC and required that he repay the $32,617.63 he owed in scholarships. On January 5, 2020, Mr. Fleetwood appealed the December 16, 2019 finding to WSU's University Appeals Board. But on February 21, 2020, WSU's Student Appeals Board upheld the finding without explanation.

## Procedural History

Mr. Fleetwood filed a complaint in the Superior Court of Washington, Whitman County in March 2020. ECF No. 5 at 6. He alleged that WSU's Appeals Board decision, affirming the December 16, 2019 determination that Mr. Fleetwood's actions violated WSU Executive Policy #15, was a misapplication of the law and was not supported by substantial evidence, thereby violating the Washington Administrative Procedure Act ("Washington APA"). *Id.* at 10-21. Mr. Fleetwood also alleged that WSU's denial of his public records requests and failure to provide him access to his investigative file violated the Washington Public Record Act. *Id.* at 21-23. WSU filed both its Answer and a Motion to Dismiss Count One of Plaintiff's Complaint on April 2, 2020. *Id.* at 33, 42.

The state court denied WSU's Motion to Dismiss on May 7, 2020. *Id.* at 94-95. The court then issued an Administrative Scheduling Order on May 12, 2020. *Id.* at 96-97. Because Mr. Fleetwood sought review of WSU's administrative decision, the state court set deadlines for the filing of the agency record and the parties' briefing on the issues. *Id.* WSU also filed a Motion for Protective Order to Seal Court Records on June 10, 2020, which the parties supplemented with a Stipulated Protective Order on June 24, 2020. *Id.* at 99, 105. On June 30, 2020, Ms. Metzner filed the certified agency record with the state court. *Id.* at 111. On July

**ORDER DENYING MOTION TO REMAND** # 4

31, 2020, Mr. Fleetwood filed his Opening Brief, as per the Administrative Scheduling Order. *Id.* at 448. But on August 19, 2020, Mr. Fleetwood then filed a motion to amend the complaint to add in additional federal claims, including First Amendment, Fourteenth Amendment, and Title IX claims. *Id.* at 483-488. The state court granted the motion to amend on September 2, 2020. *Id.* at 577. WSU filed its Response Brief on September 21st, 2020, and its Answer to Mr. Fleetwood's Amended Complaint on October 5, 2020. *Id.* at 612-34, 637. On October 2, 2020, WSU filed a notice of removal of the case to federal court. ECF No. 1.

Mr. Fleetwood filed the present Motion to Remand on October 26, 2020. ECF No. 7. The Court has not yet set a jury trial date in this case due to the pending motion.

## Legal Standard

Generally, any civil action brought in state court can be removed to federal court by the defendant if the district court would have had original jurisdiction over the case. 28 U.S.C. § 1441(a). A defendant who wants to remove a case to federal court shall file the notice of removal within 30 days of the defendant receiving the initial pleading setting forth the claim for relief upon which the action is based. 28 U.S.C. § 1446(b)(1).

Once a defendant has removed a case to federal court, the plaintiff can file a motion to remand. The remand statute provides:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk

**ORDER DENYING MOTION TO REMAND # 5**

of the State court. The State court may thereupon proceed with such case.

28 U.S.C. § 1447(c).

## Discussion

Mr. Fleetwood makes two arguments for why the Court should remand his case back to state court. First, Mr. Fleetwood argues that WSU removed his case to federal court, yet now still plans to assert an Eleventh Amendment sovereign immunity defense, which—if successful—would preclude the federal court from hearing Mr. Fleetwood's claims again WSU, a state actor. Thus, Mr. Fleetwood argues that, instead of allowing WSU to rely on an "improper tactical advantage" by invoking federal jurisdiction for the purposes of removal but denying federal jurisdiction for the purposes of sovereign immunity, the Court should remand the case back to start court. ECF No. 7 at 2. Second, Mr. Fleetwood argues that the Court should remand based on *Younger* abstention because (1) there is an already ongoing state court proceeding; (2) Mr. Fleetwood's case is a quasi-criminal enforcement action; (3) the case raises important state interests; and (4) there is no impediment to either party raising their federal claims in the state court litigation. *Id.* at 4.

WSU in response argues that (1) despite removing the case to federal court, WSU can still assert Eleventh Amendment sovereign immunity over Mr. Fleetwood's federal constitutional claims; (2) even despite WSU's Eleventh Amendment sovereign immunity defense, the Court does not have to remand the case to state court because the Court will validly have jurisdiction over Mr. Fleetwood's Title IX federal claim and Washington APA state claim; (3) *Younger* abstention is not appropriate in this case because, given that WSU removed the case to federal court, there is no longer an ongoing state proceeding. ECF No. 9 at 2. In reply, Mr. Fleetwood argues that (1) under *Lapides*, a defendant's removal to federal court is a voluntary invocation of the federal court's jurisdiction and thus

**ORDER DENYING MOTION TO REMAND # 6**

waives sovereign immunity and (2) because Mr. Fleetwood had initiated and the parties had already engaged in months of substantive proceedings in front of the state court, the state court case still counts as ongoing, despite WSU's removal. ECF No. 10 at 2-3.

For the reasons discussed below, the Court denies Plaintiff's Motion to Remand.

1. <u>Whether the Court must remand the case back to state court due to Eleventh Amendment sovereign immunity</u>

The Eleventh Amendment gives a state immunity from suit in federal court if it is sued by its own citizens. U.S. Const., Amdt. 11; *Hans v. Louisiana,* 134 U.S. 1 (1890). But the Supreme Court in *Lapides* held that, when a state removes a case to federal court, it waives its Eleventh Amendment immunity. *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 624 (2002). The Supreme Court reasoned that it would be "anomalous" and "seriously unfair" if a state could (1) voluntarily invoke federal jurisdiction for the sake of removal, but then (2) deny federal jurisdiction once the case is removed for the purposes of asserting Eleventh Amendment immunity. *Id.* at 619. However, though the language in *Lapides* is quite broad, the Supreme Court technically limited its holding to cases where (1) the removed case consisted only of state-law claims and (2) the state had explicitly waived its immunity regarding these claims in state-court proceedings, but then removed the case to federal court. *Id.* at 617 ("It has become clear that we must limit our answer to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings.").

But the Ninth Circuit expanded the scope of *Lapides* in both *Embury* and *Walden*. *Embury v. King*, 361 F.3d 562 (9th Cir. 2004), *as amended*, No. 02-15030, 2004 WL 1088297 (9th Cir. May 17, 2004); *Walden v. Nevada*, 945 F.3d 1088 (9th Cir. 2019), *cert. denied,* No. 19-1315, 2020 WL 6829067 (U.S. Nov. 23, 2020). First, in *Embury*, the Circuit clarified that *Lapides* applied to both state law

**ORDER DENYING MOTION TO REMAND** # 7

and federal law claims. *Embury*, 361 F.3d at 564 ("We conclude that the rule in *Lapides* applies to federal claims as well as to state law claims . . . by removing the case to federal court, the State waived its Eleventh Amendment immunity from suit in federal court."). But in footnote 20 of *Embury*, the Circuit expressly declined to decide "whether a removing State defendant remains immunized from federal claims that Congress failed to apply to the States through unequivocal and valid abrogation of their Eleventh Amendment immunity." *Id.* at 566 n.20. Thus, in *Walden*, the Ninth Circuit heard a case in which the plaintiff sued the State of Nevada and the Nevada Department of Corrections in state court under the Fair Labor Standards Act ("FLSA"), after which defendants removed the case to federal court and asserted Eleventh Amendment immunity. *Walden*, 945 F.3d at 1090. But because Congress did not abrogate state sovereign immunity from suit in federal court under FLSA and previous Ninth Circuit cases had held that federal courts lacked jurisdiction over FLSA cases brought against the states in the absence of a waiver of immunity, the Circuit was "faced with an issue of first impression." *Id.* at 1093-94. Ultimately, the Circuit, in the interest of providing a "clear jurisdictional rule," held that a state's removal of a case to federal court waives Eleventh Amendment immunity for all federal claims. *Id.* at 1094.

Here, Mr. Fleetwood sued WSU, a state defendant, in state court. Mr. Fleetwood initially only brought a state law Washington APA claim, but subsequently added in federal claims under the First Amendment, Fourteenth Amendment, and Title IX. WSU then removed the case—both the state law and federal law claims—to federal court. However, WSU still claims that it "can and will assert its Eleventh Amendment immunity for those claims for which the State is immune under the uncontroverted caselaw on sovereign immunity." ECF No. 9 at 5. Specifically, WSU argues that, though the Court has jurisdiction over WSU for Mr. Fleetwood's state law claims and his Title IX claim, WSU still has Eleventh Amendment immunity for Mr. Fleetwood's federal constitutional

**ORDER DENYING MOTION TO REMAND** # 8

claims. *Id.* at 6-7; *see also* 42 U.S.C. § 2000d-7(a)(1) ("[A] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . title IX of the Education Amendments of 1972").

But WSU's argument is foreclosed under *Lapides*, *Embury*, and *Walden*. These cases state that, when a state defendant removes a case to federal court, it waives Eleventh Amendment immunity for both state law and federal law claims. Thus, the Court validly has jurisdiction over all of Mr. Fleetwood's claims and thus does not need to remand to state court on the basis of Eleventh Amendment sovereign immunity.

      2. <u>Whether the Court should remand the case back to state court based on *Younger* abstention</u>

Mr. Fleetwood argues that, even if the Court validly has jurisdiction over all of his claims, the Court should still remand the case to state court based on *Younger* abstention. *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention is a doctrine based on principles of comity and federalism—it essentially asks the federal court from refrain from deciding a case when doing so would create a "negative reflection on the State's ability to adjudicate federal claims that occurs whenever a federal court enjoins a pending state proceeding." *Trainor v. Hernandez*, 431 U.S. 434, 446 (1977). The Supreme Court has articulated three categories of cases for which *Younger* abstention is appropriate: (1) state criminal prosecutions, (2) state civil enforcement proceedings, and (3) state civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (internal quotations omitted).

The Ninth Circuit has stated that, in civil cases, *Younger* abstention is only appropriate when the state proceedings are (1) ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and

**ORDER DENYING MOTION TO REMAND # 9**

judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges. *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014). Assuming that the Court finds that these threshold elements are met, the Court must also consider "whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies [i.e., if the state proceeding is in bad faith or the challenged statute is flagrantly unconstitutional]." *Id.* But the Supreme Court has emphasized that abstention from the exercise of federal jurisdiction is "the exception, not the rule." *Sprint Commnc'ns, Inc.*, 571 U.S. at 82 (internal quotations omitted). Otherwise, federal courts could ostensibly "extend *Younger* to virtually all parallel state and federal proceedings . . . where a party could identify a plausibly important state interest." *Id.* at 81.

  Mr. Fleetwood argues that his Washington APA claim is appropriate for *Younger* abstention because (1) the state proceedings on this claim are already ongoing, given that the claim has been fully briefed before the state court, (2) Mr. Fleetwood is appealing an agency decision that resulted in him receiving sanctions from WSU and losing his ROTC scholarship, which constitutes a quasi-criminal enforcement proceeding, (3) Washington has an important state interest in regulating student conduct at its state universities, and (4) WSU can easily raise its federal claims in state court. ECF No. 7 at 5. Conversely, WSU argues that Mr. Fleetwood cannot satisfy the first element for *Younger* abstention because, once a case is removed to federal court, there is no longer an ongoing state proceeding. ECF No. 9 at 7-9.

  Neither the Supreme Court nor the Ninth Circuit has addressed whether a case that has been removed to federal court is still an "ongoing state proceeding." However, two district court cases in this Circuit have found that a removed case was no longer ongoing at the state level. *See IndyMac Venture, LLC v. Silver Creek Crossing, LLC*, No. C09-1069Z, 2009 WL 3698513, at *2 (W.D. Wash. Nov. 3,

**ORDER DENYING MOTION TO REMAND** # 10

2009) ("The Court is satisfied that no concurrent state action involving these parties is currently pending. Case No. C09–1222Z was properly removed on the basis of diversity jurisdiction . . . . Because no state litigation between these parties is ongoing, the abstention doctrines to which Borrower and Guarantors refer do not apply."); *Benas v. Shea Mortg. Inc.*, No. 11CV1461-IEG BGS, 2011 WL 4635645, at *2 (S.D. Cal. Oct. 4, 2011) ("Here, there are no ongoing state court proceedings. When a case is removed to federal court, the state court 'shall proceed no further unless and until the case is remanded' . . . . Because there are no ongoing proceedings, *Younger* abstention is not appropriate.") (internal quotations omitted).

      The Court similarly concludes that a case that is removed to federal court no longer counts as an ongoing state proceeding. 28 U.S.C. § 1446(d) states that, once a case is removed, "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d). Additionally, abstaining from deciding a case that has been removed to federal court does not implicate the same comity and federalism concerns on which *Younger* is grounded. Removal is about allowing a defendant, who has no choice regarding which forum in which he is sued, to remove a case to federal court if the case falls within the court's original jurisdiction. *Younger* abstention, on the other hand, is about making sure that federal courts do not unduly interfere with or impugn the ability of state courts. These underlying policy concerns are not at odds with each other and thus the Court should not unnecessarily conflate them. Finally, as the Supreme Court noted in *Sprint*, *Younger* abstention is a narrow exception to the default rule that federal courts should exercise jurisdiction when they have it. Thus, the Court declines to abstain under *Younger* and denies Mr. Fleetwood's Motion to Remand.

//
//
//
//

**ORDER DENYING MOTION TO REMAND** # 11

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion to Remand, ECF No. 7, is **DENIED**.

2. The Court will issue a Notice Setting Scheduling Conference in this case. The scheduling conference shall take place by videoconference on **February 11, 2021**, at **10:00 a.m.** The parties will be provided with separate call-in details by email from the Court's staff one week before the hearing.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 21st day of January 2021.



Stanley A. Bastian
United States District Judge

**ORDER DENYING MOTION TO REMAND # 12**