**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| PATRICK FLEETWOOD ET AL, | **NO. 2:20-CV-00355-SAB** |
| Plaintiffs, | PLAINTIFFS' SUMMARY JUDGMENT RESPONSE BRIEF |
| v. | |
| WASHINGTON STATE UNIVERSITY, | |
| Defendant. | |

## I.    INTRODUCTION & SUMMARY OF ARGUMENT

Patrick Fleetwood had dreams following his father's footsteps into the U.S. Army's Aviation branch's officer corps. (SOF ¶1) To achieve that dream he enrolled in WSU's Army ROTC program. *Id.* Toward the end of his senior year he had a two-week consensual sexual relationship with Brianna Kostecka. (SOF ¶3-12) About one month after the relationship ended Kostecka complained to WSU's Office of

Equal Opportunity (OEO) that Fleetwood sexually harassed and retaliated against her. (SOF ¶17-52)

WSU's OEO office receives 600 – 700 harassment claims each year but only investigates about 10% of them. (SOF ¶53-54) Yet two WSU OEO employees (Rachel Brooks and Nikki Finnestead) immediately moved Kostecka's claim to the investigation phase. (SOF ¶55-66, 81) Those investigators knew that if OEO found Fleetwood harassed (or retaliated) against Kostecka then Fleetwood could lose his ROTC scholarship and his military career. (SOF ¶190,192, 194-196) ROTC knew OEO would investigate Fleetwood and acknowledged ROTC would make its decision to initiate removing Fleetwood from ROTC based on what OEO determined. (SOF ¶192)

As the data makes clear, if you are a male accused by a female of sexual harassment and that female's complaint is investigated by Finnestead or Brooks then there is a 100% chance the male will be found guilty. (SOF ¶173-180) Consistent with that data, Brooks investigated Kostecka's claim and found Fleetwood in violation of WSU Executive Policy 15 (EP 15) for sexual harassment and reprisal. (SOF ¶93,100) Once OEO finds an EP 15 violation it is forwarded to WSU's Center for Community Standards (CCS) for adjudication. (SOF ¶115) Depending on the *consequences* associated with the EP 15 violation the matter is referred to a "conduct officer" (informal process) or "conduct board" (formal process with judge/cross

examination/right to an attorney to argue). (SOF ¶112-113) Although the consequences associated with a negative EP 15 finding against Fleetwood were drastic (removal from the Army/payback of scholarship) Karen Metzner, CCS's leader, chose to adjudicate Fleetwood's matter thorough the informal "conduct officer" process and did so knowing that a consequence associated with an adverse ruling against Fleetwood could result in his dismissal from ROTC and loss of his scholarship. (SOF ¶116, 120) Metzner can think of no time when she did not uphold *any* OEO EP 15 violation finding and of the four female v male harassment matters she adjudicated she found in favor of the female all four times. (SOF ¶118, 165) Metzner could identify no time that a WSU appeal board went against her EP 15 violation finding (SOF ¶164) and, true to form, on February 20, 2020, WSU's appeal board upheld Metzner/OEO's findings. (SOF ¶168, 169) On September 14, 2021, the Whitman County Superior Court fully overturned WSU's decision that Fleetwood violated EP 15 finding WSU did not support its findings with substantial evidence and that WSU acted arbitrarily and capriciously. (SOF ¶235)

Unfortunately, Whitman County Superior Court's decision came too late to salvage Fleetwood's ROTC future. Within months of WSU OEO making its (now reversed) finding that Fleetwood violated EP 15, ROTC began the process that resulted in Fleetwood's discharge from WSU and subsequent punishment to repay over $30,000 in scholarship money. (ECF No. 36, PGID 1579, 1593) The sole factor

ROTC relied on in discharging Fleetwood was Fleetwood's transmission of a video of him having consensual sex while drunk on his 21st birthday. (ECF No. 36 PGID 1594 *citing* ¶5a) That video had nothing to do with Kostecka, was not part of Kostecka's complaint, but was discovered during OEO's investigation and sprung on Fleetwood during an OEO interview without the standard admonition that Fleetwood's refusal to answer that question could not be held against him. (SOF ¶104, 198-206) Simply put: but for OEO's wrongful finding that Fleetwood violated EP 15, ROTC would not have initiated its process. It should be for a jury to decide WSU's culpability in this sad affair and for the below reasons summary judgment should be denied.[1]

## II.    ARGUMENT

### A.    Factual issues require Fleetwood's Title IX "erroneous outcome" and "selective enforcement" claims to be tried to a jury.

*A "erroneous outcome" claim* requires the plaintiff to establish "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" meaning the (a) disciplinary proceeding was incorrect and (b) that there is a particularized causal connection between the flawed outcome and gender bias. *Schwake v. Arizona Bd. of Regents*, 967 F.3d 940, 947 (9th Cir. 2020);

---

[1] Plaintiffs withdraw the First Amendment and Due Process Constitutional claims.

*Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 583 (E.D. Va. 2018). Put differently "the plaintiff must show that he 'was innocent and wrongly found to have committed the offense.'" *Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019)(*citing Yusuf v. Vassar Coll.,* 35 F.3d 709, 2715 (2d Cir. 1994)).

*Regarding point (a)*, on September 14, 2021, the Whitman County Superior Court ruled as a matter of law that WSU's finding that Fleetwood violated EP 15 was incorrect and ordered it set aside. (SOF ¶235) Accordingly, a Court (after reviewing the 254-page Agency Record (ECF No. 21-3)) found Fleetwood was "innocent and wrongly found to have committed the offense." (SOF ¶235)

*Regarding point (b),* the discrimination element of a Title IX "erroneous outcome" case can include proof of "*statistical evidence* of gender bias in the University's decision making, *policies and procedures* that are designed to reach gender-specific outcomes, and/or *statements by university officials evidencing gender bias*" as well *as disparate treatment* of the female accuser over the male accused. *Marymount,* 297 F.Supp.3d at 585; *Powell v. Montana State Univ.*, 2018 WL 6728061, at *8 (D. Mont. Dec. 21, 2018)(Whether disparate treatment between [male] and [female]…cannot be resolved as a matter of law at this point.")(emphasis added); *Doe v. Regents of the Univ. of California*, 2015 WL 13755510, at *3 (C.D. Cal. Dec. 14, 2015)(noting facts needed to support an erroneous outcome claim "include gender biased statements by members of the disciplinary tribunal, gender

biased statements by pertinent university officials, or patterns of decision-making that show the influence of gender bias")(*citing Yusuf v. Vassar Coll.,* 35 F.3d 709, 715 (2d Cir. 1994)).

Regarding the "***statistical evidence***" of gender bias: of the 19 sexual harassment investigations involving female accusers and male accused Finnestead and Brooks have found against the male 100% of the time even though the average EP 15 violation finding is at around 50-60%. (SOF ¶173-180) Metzner has never gone against an OEO EP 15 violation finding (SOF ¶118) and in the four female accuser verses male accused matters she adjudicated as a conduct officer she found in favor of the female all four times. (SOF ¶165)

As it relates to *"**policies and procedures**"* Brooks told Fleetwood to preserve electronic communication but not Kostecka and Brooks took no action against Kostecka after Fleetwood told Brooks that Kostecka had deleted electronic communication. (SOF ¶222-225) Brooks gave Fleetwood written admonition to not contact/influence witnesses, did not give Kostecka that written admonition (but claims to have done so orally), took no tangible action against Kostecka after learning Kostecka was trying to influence witnesses, omitted Kostecka's violation of that instruction in her June 13, 2019, report but found Fleetwood at fault for retaliation/interference for contacting witnesses. (SOF ¶48, 49, 226-232)

Regarding "***gender biased statements***", Finnestead (who chose to move

Kostecka's complaint against Fleetwood into the investigation phase - - - an act that virtually guarantees a "conviction" against the male if the accuser is female), has a history of working with female domestic violence victims, served on WSU's" Vagina Monologues production team, served on WSU's commission on the status of women, hosted "FEMPowerment" lunches at WSU, is quoted in varied WSU student newspaper articles as saying "our data indicates that thousands of WSU students have been in abusive relationships", "slut shaming sets a double standard for women", and "if someone comes to you [to report sexual assault] tell this person it's not their fault, *that you believe this person,*" and bears guilt for previously blaming a high school friend for being sexually assaulted. (SOF ¶59-62)

Regarding WSU's ***disparate treatment*** of Fleetwood and Kostecka, Ms. Brooks, Ms. Finnestead, and/or Ms. Metzner:

(a) Ignored Kostecka's inconsistencies but not Fleetwood's; for on January 18, 2019, Kostecka signed a statement that Fleetwood asked her to resume sexual relations at the Red Bento, i.e. "then he asked if I wanted to resume our sexual behavior." (SOF ¶45) But twice during her January 24, 2019, interview with Finnestead and Brooks and two more times during her April 8, 2019, interview with Brooks, Kostecka claimed that Fleetwood only "hinted" about resuming sexual relations with her, e.g., "[l]ike, I think Patrick wants to get back to me. Don't know how I feel about it." (SOF ¶18; ECF No. 21-3 *citing* AR 163 (January 24 notes) AR

100-101 (April 8 notes)). Brooks ignored Kostecka's four admissions that Fleetwood never asked her to re-initiate sexual relations and instead wrote in her June 13, 2019, report, "[d]uring lunch, the Respondent propositioned the Complainant to reengage in a consensual sexual relationship." (ECF No. 21-3 *citing* AR 18¶21) Conversely, Brooks highlighted Fleetwood's inconsistent[2] answer about the number of sexual relations he had in ROTC (ECF No. 21-3 *citing* AR 15);

(b) Ignored Kostecka's own words (and the words of other witnesses) that *the* motivation to bring sexual harassment charges was not to prevent sexual harassment (or retaliation) but to either *protect* Kostecka's reputation or punish Fleetwood ("if I really want to ruin your life I can") for immoral (but not illegal) behavior (SOF ¶46, 64-68, 76, 77, 78);

(c) Ignored Kostecka's baseless claim that Fleetwood was a male whore who slept with 30 women in a semester as such baseless claims could lead to discipline (SOF ¶69-71, 219); (d) Inquired into Fleetwood's prior consensual sexual history when investigating Kostecka's sexual harassment claim even though an accused (or accuser's) prior consensual sexual history is not taken into account when determining whether sexual harassment occurred (SOF ¶243);

---

[2] Fleetwood denies having made any inconsistent statements during the course of the investigation.

(e)     Ignored Kostecka's repeated references to men in gender biased terms such as "fuck boy" "dickhead" "thirsty" (which is coded language for a horny male (SOF ¶7)) "all men are assholes" "flexing his testosterone" or "losing faith in men real quick." (SOF ¶6, 9, 12, 68, 73) "Direct evidence typically consists of clearly sexist…statements" and Kostecka's statements are certainly that. *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005). Indeed, Dan Records (an attorney and WSU investigator who oversaw Brooks' investigation into Fleetwood) testified that a male making statements analogous to Kostecka's would be "getting pretty close to where it could be…a pattern of sexual harassment." (SOF ¶215, 217, 221) Instead WSU found Fleetwood's *response* to a question about whether Fleetwood and CDT P were "Eskimo bros" (men who slept with same women) was a violation of EP 15 (SOF ¶74) even though Finnestead, Brooks, Records, Deen, and Metzner all agree that the conduct Kostecka (or WSU as it relates to the videotaping allegation) accused Fleetwood of (e.g. consensual videotaping of consensual sex, posing topless, being a jerk, making an offhanded remark about having sex, asking about missing chap stick, hinting at getting back together, etc.) was not sexual harassment. (SOF ¶124–128, 135, 185-186, 207 - 214);

(f) Ignored Kostecka's rumor spreading e.g. her inaccurate insinuation that two female cadets left ROTC on account of Fleetwood, because Kostecka was

merely relaying a "piece of the rumor mill" but finding Fleetwood in violation of EP 15 for spreading rumors (SOF ¶41-44); (g) Giving "limited weight" to four statements from pro-Fleetwood witnesses (three ex-girlfriends of Fleetwood and a statement from a third party witness as to CDT M and Kostecka's collusion in trying to get Fleetwood kicked out of ROTC) and then failing to send those statements to the WSU appeal board in violation of WSU process (SOF ¶28, 155, 156, 172); and,

(h) Ignored Kostecka's repeated "don't quote me on that" emails regarding Fleetwood's alleged harassing statements because being more precise would give Fleetwood "time to formulate some rebuttal." (SOF ¶86-94)

***A "selective enforcement,"*** claim requires a plaintiff to prove that "regardless of [his] guilt or innocence, the severity of the penalty and/***or the decision to initiate the proceeding was affected by the student's gender***." *Purdue Univ.*, 928 at 667 (emphasis added); *Schwake,* 967 F.3d at 947.  For the reasons stated above, a jury should also decide whether the decision to initiate the OEO investigation was "affected by" Fleetwood's gender. Finnestead's history of pro-female biased actions and statements coupled with a history of always finding in favor of the female accuser and against the male accused gives rise to factual issues as to whether Fleetwood's gender was a factor in her decision to investigate, especially since WSU professes to take steps to mitigate unconscious bias by its OEO investigators. (SOF ¶58-63) In determining whether to move an EP 15

SUMMARY JUDGMENT RESPONSE BRIEF - 10

complaint to the investigation stage Finnestead does not assess whether statements attributed to the accused are First Amendment protected. (SOF ¶ 82) Brooks claims that it's her practice to discuss whether speech attributed to an accused is First Amendment protected but cannot recall doing so in Fleetwood's case. (SOF ¶95)

Fleetwood's evidence in support of his Title IX (and WLAD) claims beg the question: if it was a male who walked into WSU's OEO office with text messages saying things to the tune of "all women are assholes" "fuck girl" "flexing her estrogen" "bitch" while claiming to be "losing faith in women real quick" while baselessly calling an ex-girlfriend a whore for having slept with 30 men in a semester all while admitting that he wanted to make the complaint not to stop any sexual harassment but to "get the spotlight on her and off of him" would WSU have investigated? Would WSU have found in that male's favor? Doubtful. But it should be for a jury to decide whether WSU would have reached the same result in finding Fleetwood at fault for violating EP 15 or deciding to initiate the OEO investigative process had the genders of the accused and accuser been reversed.

**B.      Factual issues require Fleetwood's WLAD claim to be tried to a jury.**

The WLAD provides, in relevant part:

The state shall not **discriminate against**, or **grant preferential treatment** to, **any individual** or group on the basis of race, **sex**, color, ethnicity, or national origin in the operation of public employment,

**public education**, or public contracting. RCW 49.60.400(1)(emphasis added).

In addition to the above-listed evidence in support of his Title IX claims, factual issues of whether WSU discriminated against Fleetwood on account of his gender (or favored Kostecka on account of her gender) also exist.

*First,* Brooks/Finnestead ignored Kostecka's repeated anti-male statements ("all men are assholes" "fuck boy")(SOF ¶6-10, 12), ignored Kostecka's stated frustration with men (SOF ¶6, 8), and ignored Kostecka's documented motivation to go after Fleetwood to protect her own reputation all while finding Fleetwood at fault for sexual harassment in the form of sending videos, posing topless, and/or saying "is this your chap stick" even though Metzner, among others, deems such conduct/statements as not sexual harassment. (SOF ¶125, 127, 135)

*Second,* circumstantial evidence of discrimination includes an entity deviating from its policies/practices, *Earl v. Nielsen Media Research, Inc.,* 658 F.3d 1108, 1117 (9th Cir. 2011), and evidence of that includes:

(a)    Brooks not telling Fleetwood of his right to not self-incriminate when confronting him with the videotape allegation which, again, did not involve Kostecka, (SOF ¶201-206);

(b)    Metzner not referring Fleetwood's matter to a "conduct board" even though she knew Fleetwood could lose his ROTC scholarship and knew of the 2016

SUMMARY JUDGMENT RESPONSE BRIEF - 12

*Arishi v. Washington State University* case which held a "brief adjudication" (read: "conduct officer" proceeding) is "inadequate where a college or graduate student faces expulsion;" *Arishi v. Washington State Univ.*, 196 Wn. App. 878, 883 (2016), (SOF ¶112-113, 117, 120-122);

(c)    Metzner not forwarding four pro-Fleetwood statements to the WSU Appeal board even though required by policy, (SOF ¶28, 149, 155, 172);

(d)    Metzner violating Washington's Public Record Act[3] by not providing a redacted copy of the OEO investigation to Plaintiffs, (SOF ¶142-147);

(e)    Metzner/Brooks/Records agreeing that Fleetwood (who heard he was being falsely accused of raping Kostecka) had a First Amendment right to both confront his accuser and gather witness statements in his favor (SOF ¶132-135, 137, 236, 237, 241) but deeming such requests retaliatory (SOF ¶161, 162) and not doing any analysis of whether Fleetwood's supposed retaliatory speech was actually First Amendment protected speech, (SOF ¶95, 107);

(f)    Ignoring the concepts of notice and time in finding Fleetwood's January 15 – 16, 2019 statements as retaliatorily interfering with the student conduct system even though Kostecka didn't even decide to use the student conduct system until the evening of January 17, 2019, and Fleetwood wasn't informed of

---

[3] Tellingly, WSU has not moved to dismiss Plaintiffs' PRA claims. (ECF No. 32)

Kostecka's OEO complaint until January 31, 2019, yet not finding Kostecka in violation of EP 15's "interference with the student conduct process" rule after learning that Kostecka tried to influence CDT HFT to say bad things about Fleetwood and justifying WSU's decision to not admonish Kostecka because Kostecka's communication with CDT HFT happened before Brooks' office "initiat[ed] any sort of formal process" even though Fleetwood's claimed retaliatory acts took place before Kostecka decided to start "any sort of formal process," (SOF ¶48, 163);

(g)    Broadening its investigation into Fleetwood but without giving Fleetwood advance notice of such, (SOF ¶198-206);

(h)    Ignoring Kostecka's anti-male statements (which per Records could violate EP 15) but finding Fleetwood at fault for sexual harassment even though the conduct attributed to Fleetwood was not harassing, (SOF ¶198-221);

(i)    Failing to complete the appeal board checklist regarding Fleetwood's appeal of Metzner's decision which deprived Fleetwood of the ability to see what the appeal board did (or did not) consider in deciding to uphold Metzner's decision (SOF ¶169-170); and,

(j)    Brooks omitting CDT HFT's statement to Brooks from the June 13, 2019, investigation report:

*Question*: Did [Kostecka] ever say anything about being afraid of retaliation?

_Answer_: I think reputation.  Hard to have rep already established like when you've slept around in program, to have rep that freshman girl who slept around. Didn't want to be girl who made rape case and people think that. Don't think she was scared of Patrick, think he has fragile ego but not aggressive. **Thinks she was more afraid of reputation, don't want to be girl that made false rape case**. (SOF ¶42, 46-47)

Brooks also did not include (as part of the Agency Record) or send (to Metzner as part of the OEO file) Kostecka's two January 28, 2019, "don't quote me on that" emails even though such communications are considered evidence germane to an EP 15 claim and unquestionably go to a witness's credibility. (SOF ¶89-91)

Brooks also omitted (from the Agency Record and her June 13, 2019, Investigation) former CDT D's April 10, 2019, email to Brooks that:

While I am no longer friends with [Fleetwood] it has nothing to do with anything pertaining to this case or his conduct. I explained to [presumably Kostecka] that **me leaving the [ROTC] program nothing to with the [Fleetwood]**." (SOF ¶102)

Under the above facts (as well as the facts in support of Fleetwood's Title IX claims) it should be for a jury to decide whether WSU either discriminated against Fleetwood or granted preferential treatment to Kostecka on account of gender.

### C. WSU interfered with Fleetwood's contract with ROTC.

#### 1. *Fleetwood establishes issues of material fact.*

A tortious interference claim requires "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that

relationship; (3) an intentional interference *inducing*[4] or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157 (1997)(emphasis added). "Interference is for *an improper purpose* if it is wrongful by some measure beyond the interference itself, such as a statute, *regulation*, recognized rule of common law, or an established standard of trade or profession." *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wn. App. 151, 158 (2002)(emphasis added). Tortious interference claims have arisen out of fact patterns analogous to this case. *Collick v. William Paterson Univ.*, 2016 WL 6824374, at *21 (D.N.J. Nov. 17, 2016) (explaining that the university's statements against two male students could constitute tortious interference with prospective economic advantage by severing their relationships with the Educational Opportunity Fund Program that provided them with loans); *Dauven v. George Fox Univ.*, 2010 WL 6089077, at *8 (D. Or. Dec. 3, 2010).

Regarding point (1), Fleetwood had a contract with Army ROTC. (ECF No. 36, ¶2 *citing* Ex. 1) Regarding point (2), WSU employees Brooks, Finnestead, and

---

[4] Induce means "to move by persuasion *or* influence." <u>Webster's Ninth Collegiate Dictionary</u>, at 615 (1987).

Metzner knew of Fleetwood's contract and the consequences (like dismissal from ROTC) if an EP 15 violation was found. (SOF ¶187-197) By way of an example, on June 11, 2019, Brooks emailed Holly Ashkannejhad (WSU's Title IX coordinator (ECF No. 35, ¶1)) as follows:

> Patrick will be receiving the outcome from an OEO investigation in which he is named as the Respondent. Because of the outcome from the investigation, his involvement within the ROTC program and career prospects could be negatively impacted. This is a concern in large part because he is set to graduate and be commissioned in December 2019. (SOF ¶ 196)

Regarding point (3), the reasonable inference, which must be weighed in Fleetwood's favor on summary judgment[5], is Brooks, Finnestead, and/or Metzner (all with a track record of always finding against the male when confronted with the scenario of a female accusing a male of sexual harassment (SOF ¶165, 176, 177)) investigated (and adjudicated) Kostecka's allegations while ignoring Kostecka's anti-male bias and motivation (SOF ¶6-12, 46, 64, 215-221) and (at least in the case of Brooks and Metzner) did so knowing LTC Hobbs, the ranking WSU ROTC officer, would be *induced* by what OEO found a la "I as the PMS will make a recommendation based on the OEO's findings and determinations." (SOF ¶120, 192) Additional evidence of intentional interference is Brooks (fully aware that ROTC's

---

[5] *See e.g. Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017).

decision to initiate removal proceedings would turn on her determination as to whether Fleetwood violated EP 15) broadening her investigation into conduct by Fleetwood (consensual transmission of sex videos) that did not involve Kostecka and not informing Fleetwood of the new allegations and Fleetwood's right to not self-incriminate. (SOF ¶198-206) A jury should decide whether WSU's finding that Fleetwood violated EP 15 induced WSU ROTC to begin removal proceedings.

Regarding point (4), the Whitman County Superior Court held WSU violated the state Administrative Procedures Act (APA) by not supporting its (WSU's) contentions that Fleetwood violated EP 15 with the required substantial evidence and that WSU's failure to send four Fleetwood favorable statements to the WSU appeals board was arbitrary and capricious. (SOF ¶169, 235) Regarding point (5), Fleetwood is damaged in being discharged from ROTC and having to repay his scholarship. (CSOF ¶12; Fleetwood Decl. ¶13)

### 2. WSU's parallel process argument ignores the fact that ROTC's dismissal process never would have started had WSU not found Fleetwood at fault for violating EP 15.

Defendant argues that since the ROTC conduct board happened before the "conduct officer" hearing and since Fleetwood admitted to sending the videos at the hearing then WSU should be let off the hook. (ECF No. 32, p. 12) Defendant's argument misses "the fact that 'it is common for injuries to have multiple proximate causes.'" *Mendez v. Cty. of Los Angeles*, 897 F.3d 1067,

1078 (9th Cir. 2018)(*citing Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011)); *Pleas v. City of Seattle*, 112 Wn.2d 794, 809 (1989)(discussing proximate cause in tortious interference case). Here WSU ROTC, in January 2019, told WSU OEO that it would proceed against Fleetwood based on what OEO determined. (SOF ¶192) In April 2019 WSU OEO, without giving Fleetwood advance notice or advise him of his right to not incriminate himself, broadened its investigation into Fleetwood to encompass the (consensual) videotaping - - - an act that, standing alone, is not sexual harassment under EP 15. (SOF ¶198-206) In June 2019 WSU found Fleetwood violated EP 15 and it was not until July 2019 that ROTC began the disenrollment process against Fleetwood and ultimately disenrolled Fleetwood based solely on the videotaping allegation that WSU unearthed in April. (CSOF ¶4)

Under those facts (which WSU cannot credibly dispute) "a reasonable juror could decide that [WSU's] conduct set in motion a process leading to [Fleetwood's] termination" from ROTC, or, stated differently that WSU's acts in finding the videotaping and EP 15 violation were the "dominos" that first fell against Fleetwood thus causing his expulsion from ROTC. *See Ballard v. Tri-Cty. Metro. Transp. Dist. of Oregon*, No. CV 09-873-PK, 2011 WL 1337090, at *18 (D. Or. Apr. 7, 2011)(*citing Poland v. Chertoff,* 494 F.3d 1174, 1181 (9th Cir 2007), and noting "the essence of [plaintiff's] 'domino' theory [and] Ninth Circuit jurisprudence confirms that such a chain of events suffices for proof of causation.").

Defendant then argues WSU's interference was not for an improper purpose or via improper means. (ECF No. 32, p.13) Defendant cites *Elcon Const., Inc. v. E. Washington Univ.*, 174 Wn.2d 157, 169 (2012) for the proposition that Fleetwood must show hostility, greed, or retaliation to show improper purpose. *Id.* *Elcon* does not; however, limit the ways by which improper purpose and improper means can be found. A court "can consider a city's ***arbitrary and capricious*** actions as evidence of improper means" and "[a] court need not find that a defendant acted with ill will, spite, defamation, fraud, force, or coercion in order to find improper purpose or means." *Greensun Grp., LLC v. City of Bellevue*, 7 Wash. App. 2d 754, 773 (2019). Nonetheless, under *Elcon* or *Greensun* Fleetwood presents sufficient evidence of "improper means" and "improper purpose" given (a) the Whitman County Superior Court's setting aside of WSU's EP 15 finding and, in doing so, noting that Metzner's failure to send all of the record to the WSU appeal board was "arbitrary and capricious, because it did not have all the evidence" and (b) the evidence showing that a reasonable jury could conclude that Finnestead/Metzner/Brooks words and conduct show hostility toward males and favoritism toward females. (SOF ¶235; CSOF ¶15)

Defendant then cites 34 CFR § 106.8(a)-(b) for the proposition that "the University had a duty". (ECF No. 32, p. 14) Those CFR provisions require WSU to have a Title IX coordinator and publish certain procedures but *do not* stand for the

proposition that a university *must investigate* every claim of sexual harassment. WSU cannot make that argument because WSU's OEO office receives 600 – 700 harassment claims each year but only investigates about 10% of them. (SOF ¶53-54) So, to the extent WSU uses 34 CFR § 106.8(a)-(b) to argue it had a duty to investigate Kostecka's allegations that argument fails.

## III.   CONCLUSION

Defendant's motion should be denied. It should be for a jury to decide the Title IX, WLAD, and tortious interference claims. A jury should decide whether Brooks and Finnestead acted on their preconceived notions about men by ignoring Kostecka's documented anti-male bias and motivation to save her reputation. Tragically, had Brooks or Finnestead set their biases aside and asked Kostecka what she meant by certain statements it could (and should) have been discovered that the real sexual harasser (if not rapist) in this tragic affair was CDT M. (SOF ¶14-15) Yet CDT M now serves as an Army officer whereas Fleetwood does not. *Id.*

DATED this February 11, 2022.

<u>s/ Matt Crotty</u>
Matthew Z. Crotty, WSBA 39284
Crotty & Son Law Firm, PLLC
905 W. Riverside Ave. Ste. 404
Spokane, WA  99201
Telephone:  509-850-7011

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties, if any, shall be served in accordance with the Federal Rules of Civil Procedure.

Dated this February 11, 2022.

_/s Matthew Crotty_
MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC
905 West Riverside, Suite 404
Spokane, WA 99201
Telephone: 509.850.7011