1
2
3
4
5
6
7
8
9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| PATRICK FLEETWOOD Et. Al., | NO. 2:20-CV-355-SAB |
| Plaintiffs, | **PLAINTIFFS'** |
| | **SUPPLEMENTAL BRIEFING** |
| vs. | **RE DAN PATTERSON** |
| | **DEPOSITION** |
| WASHINGTON STATE | |
| UNIVERSITY, | |
| Defendant. | |

Pursuant to the Court's March 16, 2022, Order, Plaintiffs submit the following supplemental briefing regarding Dan Patterson's deposition. Plaintiffs first address what Mr. Patterson's deposition revealed and then explain why that testimony creates issues of material fact.

**A. What the testimony from Mr. Patterson's deposition revealed.**

1.    Mr. Patterson is the Army Cadet Command's 8th Brigade's Director of Operations which means he is the second highest supervisor in a military

organization that oversees ROTC programs at 145 universities across America. (Crotty Decl. *citing* Patterson Dep. 4:18-22; 39:5-25; 40:1)

2.    Some unknown person representing Defendant WSU gave Mr. Patterson the declaration he signed in this case (ECF No. 36), that declaration contained numerous exhibits, but Mr. Patterson never read the exhibits ("packet") that were attached to his declaration; instead, he set the package "on my coffee table in my office. Never read it, didn't read it." (Patterson Dep. 6:2-4; 8:13-25; 9:1-17 & Ex. 1)

3.    Regarding the "packet"/exhibits to his declaration that Mr. Patterson "never read", Mr. Patterson testified that he (a) did not know who modified certain exhibits to his declaration (b) did not know whether those unknown persons used a certain system to create the documents attached to his declaration, (c) did not talk to the creators of the exhibits attached to his declaration to confirm/deny whether they used any system in creating the documents, (d) "assumed" but did not know whether the creators of certain documents attached to his declaration were operating under a duty of accuracy and took no steps to check the accuracy of the documents attached to his declaration, and (e) did not draft the documents attached to his declaration. (Patterson Dep. 14:11-22; 17:8-25; 18:5-18; 20:6-12, 24-25; 21:1-12; 23:2-25; 24:1-25; 25:1; 29:6-25; 30:1-25; 31:1-2; 48:19-20; 49:7-14 *citing* ECF No. 36 at Exs. 3, 4, and 5)

SUPPLEMENTAL BRIEFING - PAGE 2

4.     Mr. Patterson did not know whether WSU ROTC planned on convening a disenrollment board *before* WSU determined whether Mr. Fleetwood violated EP 15 nor did Mr. Patterson know if WSU's determination that Patrick Fleetwood violated EP 15 was the reason ROTC began the disenrollment process. (Patterson Dep. 15:5-21) Mr. Patterson agreed that the ROTC disenrollment board was presented with WSU's June 13, 2019, investigation report (which found Patrick Fleetwood in violation of EP 15) as part of the disenrollment proceedings. (Patterson Dep. 31:24-25; 32:1-25)

5.     Mr. Patterson testified that "first actions are always taken by the University's Title IX office" in the context of Army ROTC deciding whether to take adverse action against a ROTC cadet. (Patterson Dep. 25:23-25; 26:1-22; 27:5-20 *citing* Exhibit 3 to Exhibit 5 (bate number 04010096)) Mr. Patterson has seen no document (such as a military commander's inquiry (called an AR 15-6 investigation)) that leads him to believe the "normal procedure" (ROTC acting off of the university's Title IX determination in deciding to start disenrollment proceedings) was not followed regarding Patrick Fleetwood's dismissal from ROTC. (Patterson Dep. 28:6-18, 22-25; 29:1-5)

6.     Mr. Patterson was aware of no other information (other than finding 27 of WSU's June 13, 2019, investigation) that the WSU disenrollment board

SUPPLEMENTAL BRIEFING - PAGE 3

considered in determining that Patrick Fleetwood sent nude videos to others. (Patterson Dep. 34:1-23)

7.    Mr. Patterson could not think of any instance (other than the Patrick Fleetwood matter) where a cadet accused of misconduct asked for information from his or her university in the context of contesting a disenrollment but did not receive that information. (Patterson Dep. 37:1-25; 38:1-4)

**B. Why Mr. Patterson's deposition creates issues of material fact.**

*1.  The documents attached to Mr. Patterson's declaration do not satisfy a hearsay exception and should be excluded.*

The business record exception to the hearsay rule "applies only if the person furnishing the information to be recorded is 'acting routinely, under a duty of accuracy, with employer reliance on the result, or in short 'in the regular course of business.'" *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983). While the person authenticating the business records need not be the person who prepared or maintained those records, that person must "understand[] the system used to prepare the records." *Samsung Elecs. Co., Ltd. v. Huawei Techs. Co., Ltd.*, 2018 WL 6380662, at *12 (P.T.A.B. Dec. 4, 2018)(*citing Conoco Inc. v. Dept. of Energy*, 99 F.3d 387, 391-392 (Fed. Cir. 1996)).

Since Mr. Patterson testified he did not know the system by which Exhibits 3, 4, and 5 of his declaration were prepared those exhibits should be excluded. In fact, the Court would be within its discretion to exclude all of the declaration

SUPPLEMENTAL BRIEFING - PAGE 4

exhibits because Mr. Patterson testified that he never read them and since Mr. Patterson never read the records he cannot credibly testify whether those records were "(a) made at or near the time from information transmitted by someone with knowledge, (b) kept in the course of a regularly conducted business activity, and (c) made as a regular practice of that activity." Fed. R. Evid. 803(6). Accordingly, since Defendant cannot show the exhibits in Mr. Patterson's declaration are admissible under a hearsay exception the documents should be excluded, which, in turn further creates issues of fact as to whether WSU or Army ROTC was the cause of Mr. Fleetwood's harm.

**2. *Army ROTC programs, like WSU, wait to take disenrollment action after the university investigates which, in turn, supports Mr. Fleetwood's theory that but for WSU's (now reversed) finding that Mr. Fleetwood violated EP 15 no disenrollment action would have happened.***

Defendant moved for summary judgment arguing that since it wasn't involved in the ROTC disenrollment process it is not responsible for Mr. Fleetwood's dismissal from ROTC. (ECF No. 32, p. 1 – 2) In response Plaintiffs argued "but for [WSU] OEO's wrongful finding that Fleetwood violated EP 15, ROTC would not have initiated its [disenrollment] process." (ECF No. 37, p. 4) Mr. Fleetwood support that argument with reference to his ROTC supervisor (LTC Hobbs) email "I as the PMS will make a recommendation based on the OEO's findings and determinations" and citation to *Ballard v. Tri-Cty. Metro. Transp. Dist.*

*of Oregon*, 2011 WL 1337090, at *18 (D. Or. Apr. 7, 2011) for the proposition that Ninth Circuit case law supports Mr. Fleetwood's domino theory of causation meaning that had WSU not concluded Mr. Fleetwood violated EP 15 ROTC would not have started the disenrollment process. (ECF No. 37, p. 17, 19)

Mr. Patterson's testimony supports Mr. Fleetwood's causation theory.

*First,* Mr. Patterson did not know whether WSU ROTC planned on convening a disenrollment board *before* WSU determined whether Mr. Fleetwood violated EP 15 nor did Mr. Patterson know if WSU's determination that Patrick Fleetwood violated EP 15 was the reason ROTC began the disenrollment process. Mr. Patterson agreed that the ROTC disenrollment board was presented with WSU's June 13, 2019, investigation report (which found Patrick Fleetwood in violation of EP 15) as part of the disenrollment proceedings.

*Second,* Mr. Patterson testified that "first actions are always taken by the University's Title IX office" in the context of Army ROTC deciding whether to take adverse action against a ROTC cadet and that he saw no document which led him to believe the "normal procedure" (ROTC acting off of the university's Title IX determination in deciding to start disenrollment proceedings) was not followed regarding Patrick Fleetwood's dismissal from ROTC.

*Third,* Mr. Patterson was aware of no other information (other than finding 27 of WSU's June 13, 2019, investigation) that the WSU disenrollment board

considered in determining that Patrick Fleetwood sent nude videos to others. Finding 27 of WSU's June 13, 2019, investigation was "[t]he Respondent sent sexually inappropriate videos to several Program members. Student C provided the names of Student E, Student F, and Student G as individuals who he knew had received photos and videos." (ECF No. 34, pg. 63 *citing* WSU OEO Report Finding of Fact 27) The reason Army ROTC cited in deciding to remove Mr. Fleetwood from ROTC and repay his scholarship was "[t]he sending out of explicit videos and showing other Cadets naked and inappropriate photos of women is not something a Cadet of Character would do and is not in compliance with the Army Values." (ECF No. 36, pg. 34) Taken together, Mr. Patterson's inability to point to any factor (other than WSU's (now overturned[1]) determination that Mr. Fleetwood violated EP 15 by, *inter alia,* sending inappropriate videos, creates a jury question regarding whether WSU Army ROTC would have taken any action had WSU not (improperly and in deviation from procedure (ECF No. 38, ¶198 - 206) widened its investigation into conduct by Mr. Fleetwood that had nothing to do with Ms. Kostecka and happened years earlier.

---

[1] Recall that on September 21, 2021, the Whitman County Superior Court signed an order setting aside WSU's finding that Mr. Fleetwood violated EP 15. *See* ECF No. 40-6.

SUPPLEMENTAL BRIEFING - PAGE 7

DATED this April 25, 2022.

**CROTTY & SON LAW FIRM, PLLC**

By:      *s/ Matthew Crotty*
Matthew Z. Crotty, WSBA 39284
Crotty & Son Law Firm, PLLC
905 W. Riverside Ave. Ste. 404
Spokane, WA  99201
Telephone:  509-850-7011

SUPPLEMENTAL BRIEFING - PAGE 8

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties, if any, shall be served in accordance with the Federal Rules of Civil Procedure.

Dated this April 25, 2022.

*/s Matthew Crotty*
MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC
905 West Riverside, Suite 404
Spokane, WA 99201
Telephone: 509.850.7011

SUPPLEMENTAL BRIEFING - PAGE 9